McDANIEL *et al.* v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

1. **Contract:** LEX LOCI. The validity, nature, obligation and interpretation, of a contract, is, as a general rule, to be governed by the law of the place of performance; but it is also a general rule, that if the contract is void or illegal by the law of the place where made, it will be held void and illegal everywhere.

2. —— PERFORMANCE IN DIFFERENT PLACES. Where a railway company undertook to transport from the city of Clinton, in this State, and deliver in Chicago a certain lot of cattle, it was *held*, that the contract, being entire, and made and to be partly performed in this State, must be governed by our law as to its validity and interpretation.

3. —— RAILROAD COMPANY: RESTRICTION OF LIABILITY. It was accordingly held, where the contract in such case contained a stipulation restricting the liability of the company as common carriers, which, under chapter 113 of the Laws of 1866, was inoperative and of no effect, that the stipulation was void, and that the company were liable as common carriers, the same as if no such stipulation had been inserted.

4. **Railroad company:** LIABILITY AS CARRIERS. Where a railroad company undertook to transport a lot of cattle for their owner, who was to take care of them, in a car which turned out to be defective, by reason of which the cattle had to be changed to another car, which the owner of the cattle had no opportunity to properly provide with bedding, whereby some of the cattle got down and were injured, it was *held*, that the company was liable for the loss thus sustained.

*Appeal from Clinton District Court.*

FRIDAY, MAY 8.

ACTION by the plaintiffs against the defendant as a common carrier, for carelessly and negligently providing insufficient cars, and negligently managing the same, whereby plaintiffs' cattle, which were being transported therein, from Clinton, Iowa, to Chicago, Ill., were injured, and one of them killed. The cause was tried to the court and judgment rendered for plaintiffs for one hundred and eighteen dollars and costs. The defendant appeals.

McDaniel v. The Chicago & Northwestern Railway Co.

*E. S. Bailey* for the appellant.

I. The contract made by the parties exempts the defendants from liability for the loss and damage claimed by the plaintiff.

Chapter 113, Laws of 1866, is not intended to have extraterritorial force. It is intended to apply only to the transportation of persons and property in this State, and leave railroad companies and others engaged in the business of transportation in other States to make such contracts in reference thereto as the laws of those States permit.

The statutes of a country have no extrinsic extraterritorial force, they bind only its own citizens and the citizens of other countries while within its jurisdictional limits, and they bind directly only property within these limits. 5 N. Y. 320, 340, 348 ; 6 Hill, 526.

II. The contract was made in Iowa, but was to be, by its terms, wholly performed in Illinois. The cattle were received on board the defendants' cars at Clinton station, at the boundary line between Iowa and Illinois, and were to be delivered at South Branch station, in Chicago, Ill. The entire service or duty agreed to be performed by the defendants was to be performed in Illinois. The only stipulation in the receipt or contract to be performed by them was to deliver the property at South Branch station, in Chicago. The agreement is not to *receive* and *transport* the cattle — the receipt declares that they were already received — but to *deliver* them in Chicago, subject to the conditions specified. The alleged breach of duty is the non-delivery.

It is therefore to be presumed that the intention of the parties was that the contract, as to its validity, nature, obligation and interpretation, was to be governed by the laws of the place of performance — Illinois, and that the

same was entered into with reference to those laws. Story on Conflict of Laws, § 280 ; *Andrews* v. *Pond*, 13 Peters, 65.

The law of the place where the contract is to be performed, and not that of the place where it is made, is to govern in determining its validity and effect. *Savary* v. *Savary*, 3 Iowa, 272 ; *Boyd* v. *Ellis*, 11 id. 97 ; *Kentucky* v. *Bassford*, 6 Hill, 526.

III. By the laws of Illinois, common carriers have the right, by special contract, to restrict their liabilities as such, they still remaining liable for *gross* negligence or willful misfeasance. *Ill. Cent. R. R. Co.* v. *Morrison*, 19 Ill. 136.

The same right exists at common law. 2 Parsons on Contracts, 237, 246 ; 20 N. Y. 232 ; Redfield on Railways, § 160.

The contract in this case is valid and lawful by the laws of Illinois, and exempts the defendant from liability for the injury complained of, there being no allegation or proof of gross negligence or willful misfeasance.

IV. The case shows merely a hiring of cars and motive power at *special rates* — there being no complete delivery of the cattle to the defendants, as one of the owners — Ingwersen — accompanied them and had them in his own charge and keeping, and in such cases the carrier is not so absolutely liable as he otherwise would be. *Ill. Cent. R. R. Co.* v. *Morrison*, 19 Ill. 136 ; *White* v. *Winnissimet Co.*, 7 Cushing, 155 ; *Smith* v. *N. H. & N. R. R. Co.*, 12 Allen, 531.

V. The plaintiff is not entitled to recover, even if the special contract is held to be invalid.

The testimony shows, that the loss and injury occurred, not from any negligence, unskillfulness or bad management on the part of the defendants' employees, or from defective or unsafe cars or track. There was no unusual

McDaniel v. The Chicago & Northwestern Railway Co.

detention of the train before the cattle were injured. It was not thrown from the track, nor did any collision occur to it; the only unusual circumstance connected with the transportation was the heating of a journal of the car in which they were first loaded, and their transfer to another.

The testimony further shows, that the cause of the damage was connected with the conduct and propensities of the animals themselves — they were trampled upon, bruised and injured by themselves or by each other. The injuries were clearly occasioned by the faults and vices of the animals to themselves and to each other — by the peculiar risks incident to this mode of carriage of this species of property.

Live animals, in the course of transportation by this kind of conveyance, which is opposed to their habits, may fall down, or lie down, or be thrown down by others in the car, have their horns broken off, get bruised, trampled upon, or killed by each other. "They often go through quietly and stand up all right; it depends upon the temper of the cattle. They do better if they are acquainted. Some go through quietly and others will not; it depends upon the temper of the animals." And in all such cases where the accident is attributable to the inherent nature of the animals themselves, their peculiar habits and instincts, their viciousness or way of temper, their unruly behavior, or the peculiar risks to which they are exposed in the course of transportation, the carrier (without a special contract) is exonerated from liability for the injury. *Hall* v. *Renfro*, 3 Metc. (Ky.) 51; *Smith* v. *N. H. & N. R. R. Co.*, 12 Allen, 531; *Clark* v. *R. & S. R. R. Co.*, 14 N. Y. 570; Angell on Carriers, § 214, note A.

*A. R. Cotton* for the appellee.

(No argument found on file.)

McDaniel v. The Chicago & Northwestern Railway Co.

COLE, J. — The plaintiffs made a contract in writing with the defendant, at Clinton, Iowa, for the transporta-

1. CONTRACT: tion by defendant of certain cattle belonging
lex loci.       to plaintiffs, from Clinton, Iowa, to South Branch station (Chicago), Illinois ; the cattle were to be fed and taken care of by the owners. The contract contained this stipulation : " It is hereby mutually agreed, that said company shall not be liable for loss by jumping from the cars, delay of trains, or any damage said property may sustain, except such as may result from a collision of the train, or when cars are thrown from the track in course of transportation." A printed tariff of the company was on the same sheet with the contract and declared to be an essential part of it, which contained the statement, among others, that the company " will not assume any liability over one hundred dollars on horses and valuable live stock, except by special agreement."

The cattle were received, under the contract, at Clinton, Iowa, the owners having put them in the car and procured bedding for them as is customary. At Malta, Ill., a journal of the car was found to be hot, so that it was unsafe to run it farther. The cattle had to be unloaded and put in another car ; there was no bedding in this car and none could be procured at the station. For the want of bedding, the cattle got down in the car and one of them was killed, another had his horn knocked off, and all were more or less injured. The heating of the journal was in consequence of the brass wearing out ; if the car had been in good condition and properly oiled, it would have gone through all right. The damage amounted to one hundred and eighteen dollars.

By chapter 113 of the Laws of the eleventh General Assembly, it is enacted, " That in the transportion of persons or property by any railroad or other company, or by any person or firm engaged in the business of trans-

McDaniel v. The Chicago & Northwestern Railway Co.

portation of persons or property, no contract, receipt, rule or regulation shall exempt such railroad or other company, person or firm from the full liabilities of a common carrier, which, in the absence of any contract, receipt, rule or regulation would exist with respect to such persons or property." Laws of 1866, 121. No question is made, but that under the operation of this statute the special contract in this case would be void, so that the rights and liabilities of the parties would be measured by the common law as applicable to common carriers.

But it is claimed by appellant's counsel, that the contract, though made in Iowa, was to be, by its terms, wholly performed in Illinois; and that the law of the place where the contract is to be performed must govern in determining its validity and effect. The general rule is, that, in comformity to the presumed intention of the parties, the contract, as to its validity, nature, obligation and interpretation, is to be governed by the law of the place of performance. Story's Conflict of Laws, § 280. But it is also a general rule, that, if the contract is void or illegal by the law of the place where it is made, it is held void and illegal everywhere. Story's Conflict of Laws, § 243, and authorities cited.

*2. —— performance in different places.*

In this case, however, it is unnecessary to rest the decision upon any general rule, for, by the express terms, as well as by the necessary implication, of the contract, it was to be partly performed in Iowa. The cattle were received in Clinton, Iowa, " to be delivered at Chicago, Ill. ;" to do this, it was necessary to transport them some distance, more or less in Iowa, before they could reach Illinois. The contract being entire and indivisible, made in Iowa, and to be partly performed here, it must, as to its validity, nature, obligation and interpretation be governed by our

*3. —— railroad company: restriction of liability.*

law. And by our law, so far as it seeks to change the common law, it is wholly nugatory and inoperative. The rights of the parties, then, are to be determined under the common law, the same as if no such contract had been made.

The court found for the plaintiffs, and its finding, like that of a jury, can only be set aside when clearly and 4. RAILROAD · manifestly against the weight of evidence. COMPANY: It is not so in this case. The car was evi- liability as carriers. dently defective, and the weight of testimony shows, that from that defect the injury directly resulted to the plaintiffs. In such case, "the full liabilities of a common carrier, which, in the absence of any contract, receipt, rule or regulation, would exist with respect to such property," would be the payment of all the damages resulting to the injured party. *Harris et al.* v. *North. Ind. R. R. Co.*, 20 N. Y. 232.

Affirmed.