GEORGE HAZEL, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Common Carrier:** FREIGHT: CONTRACTS LIMITING LIABILITY: CONFLICT OF LAWS. In an action against a railroad company to recover the value of certain goods shipped over the company's road from a point in another state to a point in this state, but which were lost after coming into the possession of the company in this state it is competent for the company to show that the goods were received from the plaintiff in the foreign state under a special contract limiting the liability of the company in case of loss or damage, and such contract being legal according to the laws of the state where it was made will be enforced by the courts of this state, notwithstanding the provisions of section 1308 of the Code of 1873.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, MAY 20, 1891.

THIS is an action at law to recover the value of certain household goods, which it is claimed the plaintiffs shipped over the defendant's railroad from White

Lake in Dakota, to Sioux City, in this state. It is averred in the petition that the defendant failed to deliver said goods to the plaintiffs at Sioux City, and that they were lost. The defendant denied the allegations of the petition, and claimed that the property was delivered to the plaintiffs at Sioux City, and that the plaintiffs entered into a written contract with the defendant, through its agent at White Lake, by which, in consideration of reduced freight charges, the plaintiffs agreed that in case of loss or damage while the goods were in possession of the defendant the amount to be paid by the defendant should not exceed five dollars per hundred pounds. There was a trial by jury, which resulted in a verdict and judgment for the plaintiffs in the sum of three hundred and four dollars. The defendant appeals.—*Reversed.*

*O. J. Taylor*, for appellant: The supreme court of Dakota, in *Hartwell v. Express Co.*, 5 Dak. 563 ; 41 N. W. Rep. 732, has construed sections 1261 and 1263 of the Dakota statutes, and held that contracts of common carriers made with the shipper, limiting its liability, are valid, if signed by the consignor. The enforcement, by the courts of one state, of the laws of another, is purely a matter of comity ; but the comity by which the courts of one state respect the rights acquired under the laws of another is so universal and well established, that it has the absolute force of law. This contract where made was a legal one. The courts there would enforce it. A court sitting in a state where a contract is to be performed will enforce it, if it is valid by the law of the state where it is made. Its validity is determined by the *lex loci contractus.* *Shuenfeldt v. Junkerman*, 20 Fed. Rep. 357 ; *Turner v. Lewis*, 2 Mich. 350 ; *Talbott v. Trans. Co.*, 41 Iowa, 247 ; *McDaniel v. Railroad*, 24 Iowa, 412. The latter case was operative to invalidate a contract which would be valid by the law of the place where the contract was to be completed ; and it would seem equally clear that it would be operative to give validity to a

·contract, valid in the place where it was made, but invalid by the law of the place where the performance is to be completed. *Liverpool & G. W. S. Co. v. Ins. Co.*, 129 U. S. 397.

*Roberts & Roberts*, for appellee: There is no question that such a contract is of no validity under our Iowa law. Granting that the Dakota statute is in ·direct contravention to the laws of our own state, and that such a contract would be enforced in Dakota, would the alleged contract, if made in Dakota, have an extra territorial force? The case of *McDaniel v. Railroad*, 24 Iowa, 412, cited by appellant, is conclusive on this point. "The rights of the parties, then, are to be determined under the common law the same as if no such contract has been made." Would this alleged ·contract have been of validity in Dakota, to exempt the carriers from liability? We think not. Dakota ·Civil Code, secs. 1262, 1275, 1103, 1107, 1276, 958. In *Hartwell v. Express Co.*, decided in the supreme court ·of Dakota, 5 Dak. 563; 41 N. W. Rep. 732, the court holds that the common carrier cannot limit its liability by any contract whatever in cases of gross negligence, ·fraud or wilful wrong of itself or servants. The contract being void by the laws of Dakota as well as by the laws of Iowa, the court did not err in excluding it from the evidence, In *Shuenfeldt v. Junkerman*, 20 Fed. Rep. 357, the United States circuit court for the ·district of Iowa held that the place of the contract was the place where it was consummated, and not that where it was negotiated. This contract was negotiated in Dakota and consummated in Sioux City, Iowa. The law of Iowa must, therefore, govern as to its validity. Story's Conflict of Laws, 280. The place of payment or performance is the place of the contract. 2 Parsons on Contracts, 583. The case of *Liverpool & G. W. S. Co. v. Ins. Co.*, 129 U. S. 397, cited by appellant, seems to be confirmatory of the views heretofore advanced by ·appellee ; for by the tenor of the alleged contract in this ·case it may be presumed from the fact that the delivery

of the goods, the payment of freightage, the compensation for loss and appraisement were to be made at Sioux City, Iowa, that the parties intended at the time of making the alleged contract that the law of Iowa should govern.

ROTHROCK, J.—The goods were shipped in the name of Mrs. G. Hazel or Mrs. George Hazel. There is a conflict in the evidence as to whether the box in question was delivered to the plaintiffs at Sioux City, and whether the plaintiff, George Hazel, who personally attended to the shipment, signed the name, "Mrs. G. Hazel," to the alleged contract limiting the liability of the defendant as carrier of the goods. These disputed facts demand no further consideration than to say that they were for the jury to determine, and we find no reason for disturbing the verdict, so far as these questions are involved.

The only real question in the case arises upon the construction of the legal effect of the alleged contract limiting the liability of the defendant as a common carrier. It is not disputed that the box of goods in question was transported from White Lake to Sioux City, and that, if it was lost, the loss occurred after the property was brought into this state; and no question is made as to whether the defendant is liable as a common carrier or as the keeper of a warehouse. The learned district judge was of the opinion that, while the contract limiting the liability might be valid in Dakota, yet, as the contract of shipment was to be partly performed in this state, the contract limiting the liability is contrary to section 1308 of the Code, which in effect declares such contracts to be void, and that the courts of this state will not give extra territorial effect to such an act of a sister state. The offer to introduce said contract in evidence was overruled, and it was ignored in the instructions to the jury.

It was held in *McDaniel v. Railroad*, 24 Iowa, 412, that where a railway company undertook to transport a certain lot of cattle from Clinton, in this state, and

deliver them in Chicago, the contract being entire and partly to be performed in this state, must be governed by our law as to its validity and interpretation, and that a restriction as to liability by the company, although valid under the laws of Illinois, was invalid in this state, and the carrier was liable the same as if no such stipulation had been inserted therein. In *Talbott v. Merchants' Dispatch & Trans. Co.*, 41 Iowa, 247, a contract for the transportation of certain goods from Hartford, Connecticut, to Des Moines, in this state, contained exemptions from liability for loss by fire. The goods were destroyed by fire while in transit at Chicago, Illinois. It was held that, as the exceptions were valid in the state where the contract was made, and valid in the state of Illinois, where the loss occurred, the contract was valid, and there could be no recovery for the loss. The question as to the validity of the contract if the loss had occurred in this state was not determined. Applying the rule of the case last cited, if the goods in controversy had been lost while in the possession of the defendant in Dakota the liability would be limited as provided in the contract.

It is claimed by counsel for appellees that the contract is void even under the laws then in force in the territory of Dakota. Dakota was a territory at the time the shipment of the goods was made. The answer of the defendant sets forth the following as the law of the territory at that time in force:

"Sec. 1261. The obligations of a common carrier cannot be limited by general notice, but may be limited by special contract."

"Sec. 1263. A passenger, consignor or consignee, by accepting a ticket, bill of lading or written contract for carriage, with a knowledge of its terms, assents to the rate of hire, the time, place and manner of delivery therein stated. But his assent to any other modifications of the carrier's rights or obligations contained in such instruments can only be manifested by his signature to the same."

It is claimed in behalf of the plaintiffs that the contract restricting the liability of the defendant is not authorized by the above provisions of the law of Dakota. This position is not well taken. The statute expressly authorizes the making of a special contract, limiting the obligations of a common carrier. The contract in question limits the liability to five dollars per hundred pounds, and the liability is to attach only for loss which occurs by the gross negligence of the defendant. It is claimed that under the rule announced in *Hartwell v. Express Co.*, 5 Dak. 563; 41 N. W. Rep. 732, the statute in question is held not to be different from the common law; but this is a mistake. All that is determined in that case is that under the sections of the statute above cited a condition in a bill of lading that the carrier would not be liable for any loss or damage unless claim was made therefor within a certain time was not binding upon the shipper, because the contract restricting the time of bringing suit was not signed by him. In the case at bar the contract purported to be signed by the shipper, and there was a strong conflict in the evidence as to whether the signature was genuine. There is, therefore, no other ground upon which the exclusion of the contract from the consideration of the jury can be sustained, except that upon which it was placed by the district court. In our opinion it cannot be upheld on that ground.

It is a fundamental rule, and one of almost universal application, that, in case of a conflict of laws concerning a private contract, the law of the place where the contract is made, and not where the action is brought, is to be considered in expounding and enforcing the contract, unless it is shown by the contract, or fairly inferable therefrom, that the parties intended that the law of another state or county should control their rights. In this case the parties contracted under the laws of Dakota, and the fact that such a contract is void in this state shows that it was intended that our laws should not have any application to their

contract. The question as to the validity of such con-
tracts, where part performance is contemplated in a
state or county where the law, statute or the decisions
of the court are in conflict with the law of the place
where the contract was made, has recently been exhaust-
ively examined and discussed by the supreme court of
the United States in the case of *Liverpool & G. W.
Steam Co. v. Ins. Co.*, 129 U. S. 397; 9 Sup. Ct. Rep.
469. After a thorough consideration of adjudged cases
the court announces its conclusion in the following
language : " This review of the principal cases demon-
strates that, according to the great preponderance, if
not the uniform concurrence, of authority, the general
rule that the nature, the obligation and the interpreta-
tion of a contract are to be governed by the law of the
place where it was made, unless the parties at the time o·
making it have some other law in view, requires a con-
tract of affreightment made in one country between
citizens or residents thereof, and the performance of
which begins there, to be governed by the law of that
country, unless the parties when entering into the con-
tract clearly manifest a mutual intention that it shall
be governed by the law of some other country." We
need not cite other cases in support of the rule above
announced. Many of them will be found in 2 American
& English Encyclopedia of Law, page 834. A number
of these cases are plainly in point on the question under
consideration. Hutchinson on Carriers, p. 108. Further
elaboration or discussion appears to us to be unneces-
sary.

Our conclusion is that the court should have sub-
mitted the contract in question to the jury, with
instructions that, if they found that the name, " Mrs. G.
Hazel," was properly signed by George Hazel, the
plaintiffs were bound thereby. REVERSED