D. ROY MUMFORD, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Railroads: CONSTITUTIONAL LAW: LIMITATION OF CONTRACT RIGHT.
1   The provisions of Code section 2071, relating to the liability of

a railway company for injury sustained by an employé through the negligence of a co-employé, are not an unconstitutional infringement with the right of private contract.

**Limitation of right of action by contract.** A provision in an employé's contract with a railway company, limiting a right of action for an injury resulting to such employé through the negligence of a co-employé, is in violation of Code section 2071 and is void.

**Assumption of risk.** A brakeman only assumes the risks incident to his employment of which he has, or by the exercise of ordinary care should have, knowledge. Under the record the issue of assumption of risk was properly submitted to the jury.

**Negligence: INSTRUCTION.** An instruction in an action against a railway company for injuries to an employé, relating to defendant's negligence, was not erroneous because it failed, in stating the conditions of defendant's liability, to consider the questions of assumption of risk, contributory negligence and a violation of a company rule.

**Assumption of risk: INSTRUCTION.** Assumption of risk is based on a servant's actual or implied knowledge of the defect which caused his injury, and actual or implied consent, with such knowledge, to continue the employment. In the instant case the court's instruction as applied to the facts was correct.

*Appeal from Scott District Court.*— HON. J. W. BOLLINGER, Judge.

WEDNESDAY, OCTOBER 25, 1905.

ACTION at law to recover damages for personal injuries received by plaintiff while acting as a brakeman on one of defendant's trains. The alleged negligence consisted of defects in a side track or switch over which plaintiff was riding, rapid and unsafe speed of the train, and failure to provide a sufficient number of employés to assist in the work. Defendant's answer was a general denial, a plea of assumption of risk, and a contract bar of the right of action. On these issues the case went to trial to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Carroll Wright* and *Cook & Dodge*, for appellant.

*Ely & Bush*, for appellee.

DEEMER, J.— I.    For a reversal of the judgment de-
fendant relies upon five propositions, three of them based
upon instructions given and refused, and two upon questions
of fact; that is to say, that the verdict is without support,
and that the trial court should have directed a verdict in
defendant's favor.

That the track over which the car upon which plaintiff
was riding, and from which he claims he was thrown, was
in a dangerous and defective condition, is so well established

             that defendant's counsel in their opening argu-
3. ASSUMPTION  ment make no question as to defendant's neg-
   OF RISK.      ligence.    The contentions in this respect are
that plaintiff had knowledge of the defect and assumed the
risk; that he was guilty of contributory negligence, and at
the time he was injured was violating a rule of the company.
This rule provided that " in no case must a train be backed
over, nor cars cut from engine and run over, a public cross-
ing or highway, unless there is a man on the leading car,
who at night must display a light."    The jury was author-
ized to find that plaintiff was thrown from a box car upon
which he was riding by reason of a sudden and severe jolt or
jar to the car, caused by a defective switch track in the city
of Des Moines; that he had never been over this track before
in the daytime, and had never ridden a car over the defective
portion of the track at any time; that he had no knowledge
of the defect, and had never been in a position where he
could reasonably have discovered it.    That there may have
been defects in defendant's track at other places is not in
itself sufficient to charge plaintiff with notice of the particu-
lar defect complained of.    Plaintiff did not know of this
defect, and was in no position, so far as shown, to have ac-
quired knowledge of it.    At least the jury was authorized to

so find.  *Pierson v. R. R.,* 127 Iowa, 13, is squarely in point
on this proposition.  Plaintiff, of course, assumed the ordi-
nary hazards of his employment, but not the risks incident to
such defects in the track as were here disclosed, unless he
had knowledge thereof.  If he knew, or should in the exer-
cise or ordinary care have known, of these defects, and con-
tinued to work over them without protest, he assumed the
hazard.  This matter of assumption of risk was clearly for
the jury, and was properly submitted to it under approved
instructions.

II.  Instruction No. 13 given by the trial court reads
in part as follows:  " In other words, defendant is not liable
in this case unless plaintiff was injured by being jarred or

4. Negligence: jolted off the side of the car, as he claims,
instruction. while he was riding there with one foot in the
stirrup and one on the journal box."  This is complained of
because it is said it runs counter to the rule of assumption
of risk already mentioned, and authorized the jury to return
a verdict in plaintiff's favor if he was injured while riding
as stated in the instruction.  It is argued that the instruc-
tion entirely eliminated defendant's rule before quoted, and
that, if plaintiff was riding as stated in the instruction, he
was guilty of contributory negligence as a matter of law..
The instruction quoted is a mere excerpt from instruction
13, which according to its very terms had reference to the
question, " Was plaintiff injured by reason of defendant's
negligence ? "  It is unfair to the trial court to single out
this paragraph as stating the entire case, and claim error
on account thereof.  In the connection in which it was used
it was absolutely correct; for the reason that, if plaintiff
was not injured by being jarred from the car as he claimed,
he was not injured by defendant's negligence.  The questions
of assumption of risk, plaintiff's contributory negligence,
etc., were fully covered in other instructions, which save as
hereinafter noted are not complained of.  Moreover, we do
not think that any such violation of the defendant's rule was

shown as to justify an instruction with reference thereto. But, conceding *arguendo* that we are wrong in this, the trial court instructed the jury that they should consider whether or not plaintiff in the performance of his duty should have been in the position he was when hurt. In the absence of request for more specific statement as to the effect of defendant's rule, this was all that was required.

III. Another instruction reads in this wise: " (20½) Another question on the subject of assumed risk is, was the joint in the track in the condition of ordinary loose joints

**5. ASSUMPTION OF RISK: instruction.**

on defendant's line of railroad? Or was it of a more serious or dangerous character than the ordinary loose joint on said railroad? You are instructed that, in assuming all the ordinary risks of danger in his employment, the plaintiff assumed all the risks of danger from ordinary loose joints such as the evidence shows are frequently found in defendant's line of track. If you find a loose joint caused the accident, that it was not known to the plaintiff to have existed there, or would not have been known, had he exercised ordinary care, and that it was not an ordinary loose joint, but was of a more serious and dangerous character than an ordinary loose joint, then the plaintiff did not assume the risk of any danger caused by said joint. You must decide the question of assumed risk from the evidence in the case." This is complained of as announcing an incorrect rule of law. As applied to the facts, we think it was correct. Plaintiff must have known, or in the exercise of ordinary care should have known, of the defect which caused his injury, in order that he may be held to have assumed the risk. That he knew of other defects, even of a similar nature, is not conclusive, although evidence, perhaps, that he knew, or should have known of the particular defect complained of. The entire doctrine of waiver or assumption of risk is based upon knowledge, actual or implied, and consent or the equivalent thereof; that is to say, if the injured party in the exercise of ordinary care should have known

of the defect, he in law is held to a knowledge thereof. If with knowledge, actual or implied, he continues in his master's employ without protest and promise of repair, he is held to have acquiesced in, consented to, and assumed the risk. But without this knowledge, actual or implied, there can be no waiver. The instruction was correct. *McCauley v. Car Co.,* 169 Mass. 301, 47 N. E. Rep. 1006, relied upon by appellant, is not in point.

We come now to the principal point relied upon by the defendant for a reversal of the judgment. In plaintiff's

2. LIMITATION OF RIGHT OF ACTION BY CONTRACT. application for employment which he made to the company we find this printed provision:

In further consideration of such employment, I agree that if, while in the service of said company, I sustain any personal injury for which I shall or may make claim against the company for damages, I will, within 30 days after receiving such injury, give notice in writing of such claim to the general claim agent of said company, at Chicago, for injuries occurring in Illinois or Iowa, and to the general attorney at Topeka for injuries occurring elsewhere upon the system, which notice shall state the time, place, manner, and cause of my being injured, and the nature and extent of my injuries, and the claim made therefor, to the end that such claim may be fully, fairly, and promptly investigated; and my failure to give written notice of such claim, in the manner and within the time aforesaid, shall be a bar to the institution of any suit on account of such injuries.

For various reasons plaintiff did not comply with these provisions, and defendant pleaded his failure to do so as a complete bar to the action. Plaintiff contended, and now argues, that this agreement is in plain contravention of section 2071 of the Code, which we shall presently quote, and is therefore void; while defendant says that this section has no application, and that, if it does, that it is unconstitutional, in that it interferes with the liberty of contract guarantied by the fundamental law. The section reads as follows:

Every corporation operating a railway shall be liable for all damages sustained by any person, including employés of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employés thereof; and in consequence of the willful wrongs, whether of omission or commission, of such agents, engineers or other employés, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed; and no contract which restricts such liability shall be legal or binding.

The trial court held the provisions of the application quoted invalid, and did not submit any issue raised by the pleadings with reference to this feature of the case. While there may have been other grounds for not presenting this matter, we are precluded by the record from passing upon it, and must on this appeal determine the correctness of the trial court's rulings. The statute clearly makes any contract restricting liability invalid; that is to say, any contract which restricts the liability imposed by the statute is invalid. What is that liability? It is to pay without condition all damages sustained, etc., in consequence of the neglect of agents or the mismanagement of engineers or other employés. This liability exists until barred by the statute of limitations, and is not dependent upon any conditions precedent or subsequent. Does the provision in plaintiff's application restrict this liability? To restrict is to restrain within bounds; to limit; to confine. Webster's Unabridged Dictionary title "Restrict."

As we understand counsel's argument, they admit that this provision does limit plaintiff's recovery. Indeed, this proposition is hardly debatable. But they say that, as the restriction relates to the remedy and does not affect the right, it does not come within the purview of the statute. In other words, they say it relates to the adjective — the remedial — rather than to substantive rights, and that the section does not apply, in that the liability still remains if the remedy provided for in the application is followed. This argument

is specious, but we do not regard it sound. The provision quoted does limit the liability created by statute. It creates: a contract bar, which would not exist but for the contract. It imposes new duties upon an injured party which he was. not obligated by law to perform. It attaches a penalty for not doing these acts, which did not theretofore exist. It re- strains defendant's liability within bounds fixed by the con- tract itself. Moreover, we have expressly held that these contract limitations not only bar the remedy but extinguish the right; that is to say, limit the right. *Farmers' Ins. Co. v. State Ins. Co.,* 112 Iowa, 608. That case, which is abun- dantly supported by authority, effectually disposes of one of appellant's propositions. See, also, *McGahey v. State,* 135 U. S. 662, 10 Sup. Ct. 972, 34 L. Ed. 304; *Gulf Co. v. Trawick,* 68 Tex. 314, 4 S. W. Rep. 567, 2 Am. St. Rep. 494; *Ohio Co. v. Taber,* 98 Ky. 503, 32 S. W. Rep. 168, 36 S. W. Rep. 18, 34 L. R. A. 685; *Grieve v. Railroad,* 104 Iowa, 659; *McMillan v. Express Co.,* 123 Iowa, 236; 6 Cyc., pp. 505, 506, and cases cited. No case has been cited holding to the contrary, and we doubt if any such can be found.

But it is argued in this court, and apparently for the first time, that section 2071 is unconstitutional, because it interferes with what has been called the liberty of contract;

1. RAILROADS: constitu- tional law: restriction of contract right.

and the late case of *Lochner v. People,* 25 Sup. Ct. 541, 49 L. Ed. 937, is cited in sup- port of the contention. We do not understand that the learned tribunal deciding that case, by a majority of a single vote, intended to overrule the many cases sus- taining the validity of such statutes as the one here in ques- tion. If it did, the power of the legislature is so seriously crippled that it is well-nigh impotent. We shall assume that the legislature still possesses its police power, that it may within certain limits regulate common carriers, that it still possesses some power over corporations of its own creation, and that it may legislate for the general welfare

of the community. No one has as yet questioned these matters as we understand it. The constitutionality of this act was affirmed at a very early day in this State. See *McAunich v. Railroad Co.,* 20 Iowa, 338. This case has been followed many times, and other tribunals have consistently followed it. See *Powell v. Sherwood,* 162 Mo. Sup. 605, 63 S. W. Rep. 485; *O'Brien v. Railroad* (C. C.), 116 Fed. Rep. 502 (for a full collation of the cases and an able discussion of the principles involved); *Tullis v. Railroad Co.,* 20 Sup. Ct. 136, 44 L. Ed. 192; *Railroad Co. v. Humes Co.,* 6 Sup. Ct. 110, 29 L. Ed. 463. The federal Supreme Court has many times upheld such statutes, and we shall not overrule these cases on the strength of the Lochner Case alone. See *Railroad Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107.

There is no such thing as absolute liberty of contract. Indeed, all personal and property rights are subject to proper legislative regulation and control. Every man surrenders a part of his liberty for the benefit and enjoyment of organized society. No one may do absolutely as he pleases. A very great proportion of our legislation is a restriction on some one's liberty. Indeed, the liberty of which we boast and are so justly proud is liberty under law, and not absolute license. It is freedom frequently restrained by law for the common good. Surely a corporation, created by the State and engaged in an extrahazardous business, may be compelled to respond in damages for the negligence of its employés, notwithstanding any contract it may make or attempt to make relieving itself from such responsibility or restricting its liability therefor. These reflections are commonplace enough, but they are sometimes forgotten. It is well to recur to them again when such attacks as this are made upon legislative power. Further argument, in view of the authorities cited, is unnecessary. We have no doubt of the power of the legislature to enact such a law, and are

convinced that the provision of the application in question is an attempt to " restrict liability."

Some other questions are made in a supplemental brief filed for appellant, which were not presented in opening argument, and do not, with one exception, appear to have been made in the trial court. That exception presents nothing new for discussion, and we do not therefore consider it.

There is no prejudicial error in the record, and the judgment must be, and it is, *affirmed.*